IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | ) | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| | ) | Case No. DKC-04-0235 |
| v. | ) | |
| | ) | |
| | ) | |
| GWENDOLYN LEVI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF AMENDED MOTION FOR
REDUCED SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)**

Gwendolyn Levi, through undersigned counsel, respectfully moves this Court to grant her motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by her age (75 years), deteriorated health (due to chronic obstructive pulmonary disease and lung cancer), and completion of approximately 77% of the 24½-year sentence she received for a non-violent drug offense. Because Ms. Levi's circumstances satisfy the criteria for compassionate release under § 3582(c)(1)(A)(i), as elaborated by the Sentencing Commission in U.S.S.G. § 1B1.13 and the Bureau of Prisons in Program Statement 5050.50, we respectfully request that the Court issue an order reducing her sentence to time served.

1

## FACTUAL BACKGROUND

A. <u>Ms. Levi is serving a 24½-year sentence for a non-violent drug offense</u>

Ms. Levi pleaded guilty to one count of conspiring to distribute and possess with intent to distribute kilogram quantities of heroin, in violation of 21 U.S.C. § 846, on April 19, 2005. She admitted that between January 2003 and April 2004, she traveled with a co-defendant to New York to purchase heroin from a supplier, transported the drugs back to Maryland, then packaged the drugs for distribution in the basement of her home. On October 12, 2006, the Court sentenced Ms. Levi to 400 months' imprisonment, a term within the advisory guideline range, 360 months to life, based on a final offense level 40 and criminal history category III. *See* ECF 979 (judgment).

In April 2019, Ms. Levi moved for a sentence reduction under 18 U.S.C. § 3582(c)(2) following the retroactive application of Amendment 782 to the U.S. Sentencing Guidelines. *See* ECF 1933 (consent motion). That amendment reduced Ms. Levi's base offense level under U.S.S.G. § 2D1.1 by two levels, which lowered her recommended guideline range to 292-365 months, calculated using a final offense level 38 and criminal history category III. The government consented to Ms. Levi's request for a sentence at the low end of the amended range. *See id*. This Court granted relief and reduced her sentence to 292 months on December 5, 2019. *See* ECF 1961 (order reducing sentence).

B. <u>Ms. Levi maintained an outstanding record during more than 16 years in BOP custody</u>

Ms. Levi has been in federal custody for more than 16 years, since her arrest on April 23, 2004. Taking into account the accrual of good-time credit, Ms. Levi has completed 77% of her sentence.[1] *See* Bureau of Prisons Inmate Data, Apr. 6, 2020 (attached as Exhibit A). On June 2, 2020, pursuant to its authority under the CARES Act, the BOP transferred Ms. Levi to the custody of U.S. Probation to serve the remainder of her sentence under home confinement. Her anticipated release date from home confinement is February 8, 2025.

During her time in BOP custody, Ms. Levi built an outstanding record of rehabilitation. She took dozens of courses, including college-level correspondent courses through Anne Arundel Community College and Goucher College of Maryland; she worked as a recreation and unit orderly, earning positive performance reviews; she satisfied her court-ordered financial obligations; and she completed a 40-hour drug education program. *See* Bureau of Prisons Individualized Reentry Plan, Feb. 26, 2020 (attached as Exhibit B).[2] When Ms. Levi was not working, studying, or engaged in religious activities, she served as an advocate for others.

---

[1] If good-time credit is not taken into account, Ms. Levi has completed approximately 66% of her full sentence. *See* Bureau of Prisons Inmate Data, Apr. 6, 2020 (attached as Exhibit A).

[2] Ms. Levi's federal BOP records do not reflect dozens of courses and activities she participated in between 2007 and 2016 because she was housed in Jessup Correctional Institution, a state facility in Maryland, during that time. *See* Bureau of Prisons Individualized Reentry Plan, Feb. 26, 2020 (attached as Exhibit B); Request for Compassionate Release, Mar. 24, 2020 (attached as Exhibit C), at 16.

Additionally, Ms. Levi maintained a good disciplinary record. She received no citations during the first 12½ years of her incarceration; during the last several years, as Ms. Levi struggled with her own declining health, she received a handful of citations, though none for a serious offense. *See* Bureau of Prisons Inmate Discipline Data, Apr. 26, 2020 (attached as Exhibit D). In November 2016, Ms. Levi received a moderate (200-level) citation for arguing with another person, an incident that occurred as she was navigating her way through a federal facility after spending 9 years in a state correctional setting. In July 2018, she received a minor (300-level) citation for "being insolent" to a counselor who refused to accept her paperwork. In August 2019, she was cited for "participating in an unauthorized meeting" and "being in an unauthorized area" because she and another inmate were kneeling in prayer on the floor of the inmate's cell. Finally, in January 2020, Ms. Levi received a moderate citation for "phone abuse" after participating in a multi-party call with legal counsel.[3] She admitted to the conduct, stating she "didn't know [she] was doing something wrong." (Ms. Levi is in the process of appealing that infraction.) *Id.*

C. <u>Ms. Levi's health has significantly deteriorated during her incarceration</u>

Ms. Levi is 75 years old. She has long suffered from chronic obstructive pulmonary disease ("COPD"), a progressive disease of the lungs that causes her to have difficulty breathing. She also has been treated for lung cancer, which is currently in remission. (In September 2015, three months after Ms. Levi's only daughter died of lung cancer, she was diagnosed with the disease. In 2016, she

---

[3] The telephone call did not involve undersigned counsel.

4

underwent lengthy treatment with both chemotherapy and radiation.) In addition to these respiratory ailments, Ms. Levi has hypertension, osteoporosis, cataracts, osteoarthritis, neuropathy (a nerve disease that causes numbness and tingling), and a degenerative joint disease. *See* Bureau of Prisons Medical Records (attached as Exhibit E), at 312-313, 408.

    D.  <u>Ms. Levi is adhering to a release plan approved by the U.S. Probation Office</u>

Ms. Levi was released to home confinement on June 3, 2020. According to a release plan previously approved by the U.S. Probation Office, Ms. Levi is residing with her 94-year-old mother, Delores Brock, in the Baltimore home where Ms. Brock has lived for more than 30 years. She is supported by many devoted family members, including her mother, son (who works as a technician for Verizon), and two sisters (one who has been a registered nurse at Johns Hopkins Bayview Medical Center for 39 years and the other who has been a professor at Morgan State University for 10 years). *See* Request for Reduction (Ex. C), at 22-25.

    E.  <u>Ms. Levi submitted an institutional request for relief on March 24, 2020</u>

On March 24, 2020, Ms. Levi submitted a written request for a reduction in sentence to the warden of FCI Aliceville. *See* Request for Compassionate Release (Ex. C). Based upon counsel's information and belief, the warden of FCI Aliceville approved Ms. Levi's request for a reduced sentence and, in May 2020, forwarded the request to the BOP's Central Office, which declined to move this Court for compassionate release. Because more than 30 days have passed since the warden received Ms. Levi's request, this Court has jurisdiction to consider her motion for compassionate release. 18 U.S.C. § 3582(c)(1)(A) (providing that a defendant may file

5

a motion for compassionate release after "fully exhaust[ing]" administrative remedies with the Bureau of Prisons or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.").

## LEGAL BACKGROUND

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i), states in relevant part that a court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" Originally, Congress delegated to the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission responded in 2007 by issuing a guideline, U.S.S.G. § 1B1.13, stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, comm. n.1(A); see Bureau of Prisons Policy Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), at 6 (Jan. 17, 2019) (authorizing compassionate release for inmates aged 65 and older, who "suffer from chronic or serious medical conditions related to the aging process," whose "deteriorating mental or physical health [] substantially diminishes their ability to function in a correctional facility, for whom "conventional treatment promises no substantial improvement," and who have served at least 50% of their sentence).

6

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the Bureau of Prisons. But, during the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. *See, e.g.*, Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at *https://oig.justice.gov/reports/2013/ e1306.pdf* ("The BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered."); Dep't of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at *https://oig.justice.gov/ reports/2015/e1505.pdf#page=1* ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population, few aging inmates have been released under it."); U.S.S.G. § 1B1.13, n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates).[4]

---

[4] The First Step Act not only gave inmates the right to petition the court directly for compassionate release, but it also required the BOP, within one year of the passage of the Act, to report to Congress on the use of compassionate release, *see* 18 U.S.C. § 3582(d)(3), a clear indication that Congress envisioned broader use of the statute to safely reduce the prison population. *See, e.g.*, *Schatz Legislation on Compassionate Prison Release Passes Senate in Sweeping Criminal Justice Reform Bill*, Brian Schatz, United States Senator for Hawai'i (Dec. 18, 2018) ("Too many people who are eligible for compassionate release die in prison because the decision takes so long. And many others wait for months just to get a response. Clearly, the system is broken."); *Schatz Leads Bipartisan Group of Senators in Urging DOJ to Expand Compassionate Sentence Reduction Program for Sick and Elderly Inmates, Address Rising Prison Costs, and Improve Public Safety*, Brian Schatz, United States Senator for Hawai'i (Aug. 3, 2017) ("[T]he sentencing court, rather than the BOP, is best suited to decide if the prisoner deserves compassionate release. . . .

On December 21, 2018, the President signed the First Step Act into law. Among other criminal justice reforms, the act amended § 3582(c)(1)(A)(i) to provide the sentencing judge jurisdiction to consider a defendant's motion for compassionate release after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

Following the First Step Act, the BOP's narrow compassionate release criteria (which centered on a person's age, medical condition, and family circumstances) no longer serves as a bar to relief. Indeed, numerous courts across the country—including this Court—have recognized that § 3582(c)(1)(A), as amended, authorizes courts to grant relief whenever it finds "extraordinary and compelling reasons" warrant a reduction, consistent with the sentencing factors in 18 U.S.C. § 3553(a)—regardless of the BOP's position.

For example, Judge Blake recently found "extraordinary and compelling reasons" that differed from those found in U.S.S.G. § 1B1.13 and BOP Program Statement 5050.50 warranted relief under the statute. *United States v. Decator*, Crim. No. CCB-95-0202, 2020 WL 1676219, at \*2 (D. Md. Apr. 6, 2020), *appeal filed*, (finding disparity between sentence defendant received and what he would receive today after the First Step Act's changes to § 924(c) constituted an "extraordinary and

---

BOP should make the compassionate release program more efficient and use that authority to the full extent provided by the Commission's guidance.").

compelling reason" to reduce defendant's sentence to time served); *United States v. Bryant*, No. CCB-95-0202, ECF 373 (D. Md. Apr. 30, 2020), *appeal filed*. As this Court explained, "[w]hile Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *Id.* at *3 (citation omitted). *See also United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019) ("For if the Director of the BOP were still the sole determiner of what constitutes an extraordinary and compelling reason, the amendment's allowance of defendants' own § 3582(c)(1)(A) motions for reduction of sentence would be to no avail. Such a reading would contravene the explicit purpose of the new amendments."); *United States v. Ebbers*, 2020 WL 91399, at *4 n.6 (S.D.N.Y. Jan. 8, 2020) ("[T]he First Step Act reduced the BOP's control over compassionate release and vested greater discretion with courts. Deferring to the BOP would seem to frustrate that purpose.").

Numerous courts are in accord with this Court's rulings in *Decator* and *Bryant*. *See, e.g.*, *United States v. Haynes*, No. 93-CR-1043-RJD, 2020 WL 1941478, at * 15 (E.D.N.Y. Apr. 22, 2020); *United States v. Marks*, No. 03-CR-6033L, 2020 WL 1908911, at *5 (W.D.N.Y. Apr. 20, 2020); *United States v. McPherson*, No. 94-cr-05708-RJB, ECF No. 209 (W.D. Wash. Apr. 14, 2020); *United States v. Hope*, No. 90-cr-06108-KMW-2, ECF No. 479, at *8 (S.D. Fla. Apr. 10, 2020); *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *15 (S.D.N.Y. Apr. 6, 2020); *United States v. Owens*, No. 97-CR-2546-CAB, ECF No. 93 at 4 (S.D. Cal. Mar. 20, 2020); *United States v. Redd*, No. 1:97-cr-0006-AJT, 2020 WL 1248493, at *8 (E.D.

Va. Mar. 16, 2020); *United States v. Perez*, No. 88-10094-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020); *United States v. Young*, No. 2:00-cr-0002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020); *United States v. Maumau*, No. 2:08-cr-0758-TC, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020); *United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8. 2020); *United States v. Valdez*, No. 3:98-cr-0133-01-HRH, 2019 WL 7373023, at *2 (D. Alaska Dec. 31, 2019); *United States v. Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); *United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019); *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5-6, 8-9 (M.D.N.C. June 28, 2019); *United States v. Cantu-Rivera*, No. H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019); and *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019).

## ARGUMENT

**I. Gwendolyn Levi Satisfies the Criteria for Compassionate Release Under 18 U.S.C. § 3582(c) Because She is 75 Years Old, in Deteriorating Health, and Has Served Approximately 77% of Her Sentence Including Good-Time Credit**

Gwendolyn Levi is 75 years old, medically vulnerable, and has served roughly 77% of her 24½-year sentence (counting good-time credit); thus, she readily satisfies

10

the criteria for compassionate release laid out by the Bureau of Prisons in Program Statement 5050.50 and the Sentencing Commission in U.S.S.G. § 1B1.13.

According to the BOP's program statement, a person is eligible for compassionate release if she falls into any of the following three categories: (i) she is at least 65 years old, has a chronic medical condition that has diminished her ability to function in a correctional setting, and has served at least 50% of her sentence ("elderly medical"); (ii) she is at least 65 years old and has served the greater of 10 years or 75% of her sentence ("elderly"); or (iii) she is suffering from an end of life trajectory with less than 18 months left to live ("terminal"). PS 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), at 6 (Jan. 17, 2019). Applying this criteria, Ms. Levi clearly qualifies for compassionate release under the second category ("elderly) because of her age (75) and the fact that she has served more than 16 years (approximately 77%) of her sentence. She also arguably qualifies for relief under the first category ("elderly medical") because her deteriorated physical health (due to chronic obstructive pulmonary disease, lung cancer, hypertension, neuropathy, cataracts, and other ailments) have diminished her ability to function in a correctional setting.

Like the BOP's program statement, the Sentencing Commission's guideline provides that a person is eligible for compassionate release if she falls into any of three similarly-defined categories: (i) she has a terminal illness ("terminal"); (ii) she is at least 65 years old, has deteriorated health, and has served the lesser of 10 years or 75% of her sentence ("elderly"); or (iii) she has a diminished ability to provide self-

care and is not expected to recover ("medical"). Applying that criteria here, Ms. Levi clearly qualifies for compassionate release under the second category ("elderly") because she is 75 years old and has served 16 years (approximately 77%) of her sentence. She also arguably qualifies for relief under the third category ("medical") for the same reasons described above.

Even assuming, *arguendo*, that this Court determines Ms. Levi does *not* specifically meet the narrow criteria for compassionate release identified by the Bureau of Prisons and the Sentencing Commission, she readily meets the broader criteria for relief that courts have employed following the First Step Act. As this Court recently noted in *Decator*, "[w]hile Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *Decator*, 2020 WL 1676219, at * 3 (citation omitted). As such, this Court should exercise its discretion under § 3582(c) to find that Ms. Levi's advanced age, deteriorating health, completion of a vast majority of her lengthy sentence, and exemplary record constitute "extraordinary and compelling reasons" warranting relief. *See infra*, at 8-10.

## II. Weighing the Relevant § 3553(a) Factors, a Time-Served Sentence is Sufficient, But Not Greater Than Necessary, to Accomplish the Goals of Sentencing

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. §3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i).

Here, Ms. Levi's advanced age, compromised health, and length of sentence already served, when considered in light of the relevant § 3553(a) sentencing factors, warrant a sentence of time served.

### A. Ms. Levi's drug offense was serious, but not violent

Ms. Levi pleaded guilty to committing a non-violent drug offense more than 15 years ago. She admitted acting as a courier between suppliers and distributors of heroin by driving between Maryland and New York to obtain the drugs, then packaging them for sale by others. Ms. Levi's conduct was serious, as she readily admits. But her conduct differed from that of many people involved in the drug trade because she did not possess a weapon and she never engaged in an actual, attempted, or threatened act of violence.

### B. Ms. Levi productively used her time in confinement to advocate for vulnerable populations

Ms. Levi has a long list of accomplishments from her 16 years of confinement, including a degree in ministry, college-level courses, and experience in training service dogs. But what Ms. Levi is most proud of, and what she considers her calling, is the work she did advocating for vulnerable groups—the elderly, the medically-impaired, victims of abuse, and individuals suffering from mental illness. Among her many endeavors, Ms. Levi: spent 7½ years as the chairperson of a senior advocacy group called "Women of Wisdom"; edited the prison newspaper, bringing attention to the plight of overlooked inmates; developed a proposal for a holistic senior living program; established an anti-bullying campaign; participated in a book club with retired federal judges to promote prison literacy; worked as a peer counselor;

13

spearheaded a computer literacy program for seniors; worked with prison ministry; participated in a relief effort with the College of Notre Dame of Maryland to benefit victims of domestic violence; and successfully lobbied for the installation of ramps and wheelchair lifts in facilities so that older and medically-compromised inmates could participate in group activities and enrichment programs. *Id.*; Request for Compassionate Release, Mar. 24, 2020 (attached as Exhibit C), at 16.

Indeed, up until her departure from FCI Aliceville on June 2, 2020, Ms. Levi continued her important work, running a motivational workshop for fellow inmates, taking classes through Samford University's Ministry Training Institute, and participating in a spiritual program called Rubies for Life. *Id.*

### C. Ms. Levi poses a negligible risk of recidivism

Ms. Levi is 75 years old, an age at which recidivism is extremely unlikely. According to the U.S. Sentencing Commission, the re-incarceration rate for inmates aged 65 years or older is only 4.1%. U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offender* (December 2017), at 23, Fig. 15, *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/ research-publications/2017/20171207_Recidivism-Age.pdf*. What is more, the 4.1% recidivism rate only accounts for a subject's age; it does not account for other factors (including her gender, strong family support, religious observance, and compromised health) that further reduce the likelihood Ms. Levi will be within the small number of reoffenders.

Additionally, Ms. Levi has never engaged in violent behavior. Her entire criminal record consists of three decades-old, low-level offenses. In 1984, when Ms.

Levi was 25 years old, she was convicted of misdemeanor drug possession and carrying a weapon without a license, for which she received an 18-month term of probation. And in 1996, she was convicted of attempted possession with intent to distribute cocaine, for which she served a three-year sentence.

## CONCLUSION

For the extraordinary and compelling reasons presented here, including Gwendolyn Levi's advanced age, deteriorated health, completion of the vast majority of her lengthy sentence for a non-violent drug offense, and dramatic transformation during more than 16 years of incarceration, she asks this Court to reduce her sentence to time served.

Respectfully submitted,

JAMES WYDA
Federal Public Defender for the
District of Maryland

 /s/ *Sapna Mirchandani*
Sapna Mirchandani
Assistant Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
Phone: (301) 344-0600
Fax: (301) 344-0019
*sapna_mirchandani@fd.org*

## REQUEST FOR HEARING

Pursuant to Rule 105.6 of the Local Rules of the United States District Court for the District of Maryland, defense counsel requests a hearing on this motion.

       /s/ *Sapna Mirchandani*
      Sapna Mirchandani

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically sends notice of such filing to all registered counsel of record.

       /s/ *Sapna Mirchandani*
      Sapna Mirchandani